IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JASON J. HYATT,

    Plaintiff,

v.

SCOTT WALKER, et al.,

    Defendants.

OPINION & ORDER

18-cv-319-wmc

---

*Pro se* plaintiff Jason Hyatt filed this complaint under 28 U.S.C. § 1983, alleging that the defendants have been improperly diverting funds from one of his prison accounts to pay down victim restitution and witness surcharges from his criminal case, such that he does not have access to sufficient funds to meet his needs. Hyatt has made an initial partial payment of the filing fee in accordance with 28 U.S.C. § 1915(b)(1), so his complaint is ready for screening under 28 U.S.C. § 1915A. In addressing any *pro se* litigant's complaint, the court must construe the allegations generously. *See Haines v. Kerner*, 404 U.S. 519, 521 (1972). Even under this lenient standard, however, the court concludes that this case must be dismissed for the reasons that follow.

ALLEGATIONS OF FACT[1]

Hyatt is currently incarcerated by the Wisconsin Department of Corrections ("DOC") at the Waupun Correctional Institution ("Waupun"). He names eleven defendants: then Governor Scott Walker; former DOC Secretary Jon Litscher; then DOC

---

[1] For purposes of this order, the court assumes the facts above based on the allegations in Hyatt's complaint, when viewed in a light most favorable to him.

Secretary Cathy Jess; DOC Assistant Administrators Jim Schwochert and Mark Clements; Division of Adult Institutions ("DAI") Management and Budget Director Wendy Monfils; Waupun Warden Brian Foster; financial program supervisors N. Kamphius and G. Loomans; financial specialist M. Hille; and Waupun inmate complaint examiner T. Moon.

Hyatt alleges that starting in March of 2017, DOC and Waupun staff started deducting 50% of Hyatt's incoming funds for various purposes, including victim restitution and witness surcharges in accordance with Hyatt's judgment of conviction ("JOC") in his criminal case. Hyatt claims that deductions for that purpose were inappropriate because there were still outstanding issues in that criminal case, including the restitution order, and because the deductions should have only been 25% of his incoming funds. However, after an amended JOC was entered and Hyatt received the final restitution order, the deductions stopped for a period of time but then resumed again in November of 2017, at the 50% rate.

When Hyatt investigated his deductions, he discovered a communication from Waupun's Business Office, which included the statement that "all inmates [are being deducted] at 50% as of 7/1/2016," and that the deduction decision came from the DAI. When Hyatt followed up with the Business Office, he received an explanatory memorandum stating that Wis. Stat. § 973.20(11)(c) permits "the DOC to collect from all inmates monies at a percentage determined by the DOC to be reasonable for payment of victims." (Compl. (dkt. #1) at 5.) Hyatt filed numerous grievances complaining about the deductions, but all of them were rejected as untimely and not supported by good cause.

OPINION

While Hyatt asserts that defendants have been deducting from his income in violation of the Ex Post Facto Clause as well as his First, Fifth and Fourteenth Amendment rights as well as state law, his allegations only require discussion of his rights under the Ex Post Facto Clause, the Fifth Amendment and the Fourteenth Amendment's Due Process Clause.

Hyatt suggests that the deductions pursuant to § 973.20 violate the Ex Post Facto Clause because it was enacted in 2015, after his 2013 arrest. However, the Ex Post Facto Clause "is aimed at laws that retroactively alter the definition of crimes or increase the punishment for criminal acts." *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 504 (1995). Hyatt does not allege his actual restitution amount was incorrect, only that § 973.20 permitted the DOC to increase "permissible rate at which restitution payments may be collected." *Quarles v. Kane*, 482 F.3d 1154 (9th Cir. 2007) (rejecting Ex Post Facto challenge to statute that increased from 20 percent to 50 percent the amount of money that could be deducted from prisoner accounts to pay restitution orders). As such, the deductions do not implicate the Ex Post Facto Clause.

Hyatt's reference to the Fifth Amendment could be to the Takings Clause, which prohibits the government from taking a person's property for public use without just compensation. Yet several courts have held that deducting money from a prisoner's account to pay a debt does not qualify as a "taking" within the meaning of the Fifth Amendment. *Barber v. Wall*, 66 F. App'x 215, 216 (1st Cir. 2013) ("[I]t is clear that the debiting of funds from [an inmate's] account in satisfaction with a properly imposed

3

restitution order does not amount to a taking."); *Meineke v. Finnan*, No. 1:11-cv-1624, 2014 WL 3586546, at *3 (S.D. Ind. July 21, 2014). Accordingly, Hyatt has no claim under the Fifth Amendment.

Finally, the Fourteenth Amendment prohibits a state from depriving "any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. To claim these protections, plaintiff must first allege a protected liberty or property interest at stake. *Averhartv. Tutsie*, 618 F.2d 479, 480 (7th Cir. 1980). Here, plaintiff would appear to have pleaded at least an arguable property interest in the funds on deposit in his prison accounts, *see Campbell v. Miller*, 787 F.2d 217, 222 (7th Cir. 1986), including money sent to him from sources outside the prison, such as friends and family, *see Mahers v. Halford*, 76 F.3d 951, 954 (8th Cir. 1996). Assuming that he can establish such a property interest in funds held in his inmate account, however, Hyatt must also demonstrate that the defendants have failed to afford him sufficient procedural protections from wrongful withholdings or deductions of those funds. *See Hamlin v. Vaudenberg,* 95 F.3d 580, 584 (7th Cir. 1996).

Hyatt appears to challenge Wis. Stat. § 973.20(11)(c), which provides that "[i]f a defendant who is in a state prison or who is sentenced to a state prison is ordered to pay restitution, the court order shall require the defendant to authorize the department to collect, from the defendant's wages and from other moneys held in the defendant's prisoner's account, an amount of a percentage the department determines is reasonable for payment to victims." He claims that this language is ambiguous language with respect to the amount DOC officials may deduct. Yet the statute simply gives the DOC *discretion*, it

4

is not clearly ambiguous. In any event, Hyatt's criminal proceedings and JOC provided him notice that the DOC would be deducting a portion of his income from his account to satisfy the terms of the JOC. Indeed, the publicly available record of Hyatt's criminal proceeding shows that his JOC provided for the 50% deduction. *State v. Hyatt*, Case No. 2014CF57 (Portage Cty.), *available at* https://wcca.wicourts.gov (last visited May 14, 2019).

Even accepting that DOC officials have been applying § 973.20 inappropriately by increasing the percentage to 50%, he has not identified any process to which he was entitled but did not receive. Indeed, "[t]he requirements of due process are considerably relaxed in the setting of prison discipline." *Eads v. Hanks*, 280 F.3d 728, 729 (7th Cir. 2002). Specifically in the context of restitution orders, state corrections officials can generally enforce restitution orders provided that the underlying proceedings conform to the minimum requirements of procedural due process set forth in *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). *Campbell v. Miller*, 787 F.2d 217, 224 (7th Cir. 1986).

On the facts alleged, plaintiff has no due process claim. To begin, plaintiff does not challenge the existence or amount of his state court ordered restitution, or the witness surcharges, nor does he claim that payments should not be made. Rather, his focus is on exactly how much the DOC deducts at a time. Yet as currently pled, the deductions have been consistent with the state court's order and the DOC's discretionary statutory authority governing how inmate funds should be disbursed for purposes of restitution.

Moreover, even if the deductions were improper, plaintiff cannot establish on the facts pleaded that any of the defendants denied him due process in arranging for his

5

deductions. *See Zinermon v. Burch*, 494 U.S. 113, 125 (1990) ("In procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law."*) (emphasis in original). As set forth above, plaintiff was allowed to make multiple inquiries and bring multiple challenges as to whether Waupun had been making proper deductions. In response to his inquiries, Waupun's business office reviewed the payment process and confirmed in writing that Hyatt's concerns were unfounded. These responses suggest that plaintiff received sufficient process to fulfill the requirements of the Fourteenth Amendment, and in any event, Hyatt still has remedies under state law to address his concerns. *See West v. Berge*, No. 05-C-37-C, 2005 WL 503819, at *4 (W.D. Wis. Feb. 28, 2005) (dismissing claim for unauthorized deduction from prisoner's account because prisoner had adequate remedies under Wisconsin statutes). Accordingly, the court will not permit him to proceed on this claim, and since his allegations do not support any other constitutional claim, the court is declining to exercise jurisdiction over his purported state law claims and dismissing this lawsuit. If Hyatt believes that § 973.20 is inconsistent with state law, his remedy is to file a petition for a writ of certiorari in state court, if he has not already done so.

ORDER

IT IS ORDERED that:

(1) Plaintiff Jason Hyatt is DENIED leave to proceed on any claim, and this case is DISMISSED for failure to state a claim upon which relief can be granted in federal court.

(2) The dismissal will count as a STRIKE for purposes of 28 U.S.C. § 1915(g) (barring a prisoner with three or more "strikes" or dismissals for a filing a civil action or appeal that is frivolous, malicious, or fails to state a claim from bringing any more actions or appeals *in forma pauperis* unless he is in imminent danger of serious physical injury).

Entered this 14th day of May, 2019.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge